IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rahmad N. Norman, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 8:09-cv-02479-JMC |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Michael Frederick, Dale Kittles ) | |
| Christopher Hamlett, John Doe ) | |
| Richard Roe, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

This matter is before the court on Defendant Dale Kittles's ("Kittles") Motion for Summary Judgment. [Doc. 25]. Plaintiff Rahmad N. Norman's ("Plaintiff") complaint alleges that officers Defendants Michael Frederick ("Frederick"), Christopher Hamlett ("Hamlett"), Richard Roe, Dale Kittles, all of whom are police officers; and any unidentified officer violated his civil rights under 42 U.S.C. § 1983 as well as under the Fourth, Fifth[1], Eighth[2], and Fourteenth[3] Amendments to the United States Constitution. Based on the record before the court, Defendant Kittles's motion is granted in part and denied in part.

---

[1] The Fifth Amendment protects persons against prosecution of particular crimes without indictment, double-jeopardy, self-incrimination, and the deprivation of life, liberty or property without due process. *See* U.S. Const. amend. V; *see e.g., McKune v. Lile*, 536 U.S. 24 (2002); *Chavez v. Martinez*, 538 U.S. 760 (2003). Plaintiff has neither alleged facts nor presented evidence to support a violation of the Fifth Amendment; therefore, Defendant Kittles's motion with respect to Plaintiff's Fifth Amendment claim is granted.

[2] The Eighth Amendment prevents cruel and unusual punishment of those convicted of a crime. *See Ingraham v. Wright*, 430 U.S. 651 (1977). In the present case, Plaintiff was not a convicted prisoner; therefore, Defendant Kittles's motion with respect to Plaintiff's Eighth Amendment claim is granted.

[3] Courts have refused to extend the constitutional protections of the Fourteenth Amendment to substantive due process analysis in the context of a claim of excessive force during arrest. *See Graham v. Connor,* 490 U.S. 386, 395 (1989). Therefore, Defendant Kittles's motion with respect to Plaintiff's Fourteenth Amendment claim is granted.

1

## FACTS AND PROCEDURAL BACKGROUND

On September 27, 2006, Plaintiff was working undercover as an informant for the Police Department of the City of Greenwood, South Carolina ("GPD"). Plaintiff worked in this capacity as a part of an operation in which he had arranged to purchase a quantity of cocaine from a drug dealer. The planned purchase was to take place in the parking lot of what the parties refer to as the Old Lowes.

Earlier on the day of the scheduled purchase, the person from whom Plaintiff was to purchase the cocaine originally had been arrested by agents of the Greenwood County Sheriff Department's ("GCSD") Vice Illegal Drugs Organized Crime ("VIDOC") unit. Defendant Hamlett participated in the VIDOC operation and was one of the officers that intercepted phone calls to the person VIDOC had arrested in an attempt to set up a reverse sting operation. He intercepted Plaintiff's call to that person and GCSD officers immediately assembled a surveillance team to handle the takedown plan for this anticipated drug transaction.

Defendant Hamlett acted in an undercover capacity as the drug dealer whom Plaintiff had contacted. Hamlett set up his post in a decoy vehicle parked at the Old Lowes. Defendant Hamlett was accompanied by a security team which was positioned to effect the arrest of the suspects. Upon his arrival at the incident location, Defendant Hamlett parked at the top end of the parking lot, in front of the vacant building, and remained in his vehicle with only the parking lights activated. Plaintiff had arranged for the drugs to be purchased by Ken Watson ("Watson"), the individual who was driving the automobile in which Plaintiff was a passenger. Upon arriving at the parking lot of the Old Lowes where the drugs were to be purchased, Plaintiff became suspicious because he did not see the individual who was to sell Watson the drugs, nor did he see anyone in what he understood to be the seller's car. Plaintiff also found it suspicious that the

parking lights of the seller's car were on.  As a result, Plaintiff instructed Watson to keep driving, and neither Plaintiff nor Watson made contact with the other car or the individual who was to sell Watson the cocaine.  As they were leaving the scene, patrol cars stopped the car.

Defendant Kittles allegedly participated in the orchestration of the sting operation. Defendant Frederick was another officer participating in the sting operation.  In particular, Defendant Frederick was assigned to one of the three takedown cars whose role was to block the suspect vehicle's egress and arrest the occupants.  When the "go order" was given, the takedown vehicles activated their blue lights and immediately moved in to perform a felony take down on the suspect vehicle.  The driver, Watson, was removed from the vehicle and placed under arrest.

After the patrol cars stopped the suspect vehicle, Defendant Frederick immediately approached the passenger side and apprehended Plaintiff.  Plaintiff alleges that he was forcibly removed from the vehicle, held to the ground and handcuffed.  Plaintiff further claims that the officers identified him, knew he had worked for them as an informant, and heard him say he was working for the GPD.  Defendants dispute the extent of their knowledge of Plaintiff's capacity as an informant prior to Defendant Kittles's exposure of the wire equipment worn by Plaintiff. Defendant Hamlett contends that shortly thereafter he exited his decoy vehicle, proceeded to the passenger side of the suspect vehicle, and observed that Defendant Frederick already had Plaintiff on the ground.

Plaintiff alleges that he was struck in the teeth with a barrel end of a shotgun and an unknown officer either kicked or struck him in the back.  In addition to these injuries, Plaintiff's glasses were broken. Although Plaintiff admits that he could not see who was kicking him or kneeling in his back, he did testify in his deposition that Defendant Frederick was the officer that

struck him with the shotgun. *See* Deposition of Rahmad N. Norman ("Norman Dep."), at 124-125. [Doc. 25-2]. Defendant Frederick denies striking Plaintiff, but admits that he possessed a shotgun at the time of Plaintiff's apprehension and that he used that shotgun to apply pressure to Plaintiff's shoulder and upper arm. *See* Statement of Michael Frederick. [Doc. 24-3]. Plaintiff claims that Defendant Kittles approached him, ripped his shirt open, and saw the wired vest that he was wearing. Plaintiff's injuries required that he seek hospital treatment. Plaintiff was found to have blood in his urine.

Plaintiff alleges that it is the general policy of the VIDOC unit to notify the shift captain of the GPD when a major drug operation is being conducted in the City of Greenwood. The parties do not dispute that no deputy from the GCSD or VIDOC notified the GPD of the operation despite the fact that the location was in the City of Greenwood. While at least one Defendant noted that communication between the police departments could have been better handled, *see* [Doc. 41-4, at 4], Defendants maintain that their operation was appropriately conducted.

Plaintiff filed his Complaint on September 21, 2009. [Doc. 1]. Defendant Kittles filed his Answer on November 1, 2009 [Doc. 6] and filed the instant Motion for Summary Judgment [Doc. 25] on September 20, 2010.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) that he is entitled to

4

judgment as a matter of law.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

**I.      Fourth Amendment Excessive Force Claim**

Plaintiff alleges that during the course of the events giving rise to his alleged injuries, "[t]he Defendants either struck and beat [him] in violation of his rights as guaranteed by the Constitution of the United States of America or they failed to protect him from such abuse by the other officers also in violation of his rights as guaranteed by the Constitution of the United States of America." [Doc. 1, at 3, ¶ 11] Plaintiff argues that a genuine issue of fact exists because

arrests consistent with the Fourth Amendment do not result in broken teeth, blood in his urine as a result of trauma, and broken glasses unless they involve excessive force. [Doc. 36, at 3]. Plaintiff concedes that he is unable to identify the officer or officers who actually kicked him, but he maintains that the officers had the ability to stop those particular officers who were allegedly using unlawful force on him but failed to do so. [Doc. 36, at 3-4].

The Fourth Amendment prevents unreasonable searches and seizures of "persons, houses, papers, and effects . . . ." U.S. Const. amend IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. State of* California, 384 U.S. 757, 767 (1966). To state a deprivation of Plaintiff's Fourth Amendment rights for the alleged use of excessive force, Plaintiff must be able to demonstrate that he was subjected to unreasonable force and that he suffered a resulting injury. *See Graham v. Connor*, 490 U.S. 389 (1989). The test for what qualifies as reasonable is based on objective criteria: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *see also Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988). "In determining what amount of force is objectively reasonable under the circumstances, due regard must be given to the fact that police officers are often forced to make split-second judgments, under tense, dangerous, and rapidly moving circumstances, about the amount of force necessary to effect a particular arrest." *Martin*, 849 F.2d at 869. Not every shove or push during an arrest will give rise to liability. *Id.* at 870.

When analyzing the reasonableness of an officer's alleged application of excessive force in the arrest context, courts must "balance[] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests

alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8 (1985) (quoting *U.S. v. Place*, 462 U.S. 696, 703 (1983)).  "The nature of the intrusion on a plaintiff's Fourth Amendment rights is generally measured by 'the amount of force employed to affect the seizure.'" *Turmon v. Jordan*, 405 F.3d 202, 207 (4th Cir. 2005) (citing *Howerton v. Fletcher,* 213 F.3d 171, 173 (4th Cir. 2000)).  Courts may also consider "[t]he extent of the plaintiff's injuries . . . ." *Id.* (citing *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)).  In "assessing the governmental interests at stake," the court may consider "several factors . . . including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer[] or others, and whether he . . . actively resisted arrest or attempted to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).  "This inquiry requires that the court consider whether the facts, in the light most favorable to plaintiff, demonstrate that defendant[] violated a constitutional right." *Smith v. Cooper*, Civil No. 2:09-cv-1650-DCN, 2011 WL 1376100, at *8 (D.S.C. April 12, 2011) (citing *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002)).  Finally, in an examination of an excessive force claim, "the core judicial inquiry . . . is not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Plaintiff argues that genuine issues of material fact exist because his injuries would not have occurred without an application of excessive force.  [Doc. 36, at 3].  In support, Plaintiff cites to his own deposition testimony that the officers used excessive force and beat him because they were upset that he was working for the GPD and not the GCSD.  Plaintiff's argument is unavailing because he relies, at least in part, upon the alleged subjective beliefs and the state of mind of these particular officers in order to demonstrate a factual dispute. However, subjective

7

reasonableness is not the correct standard under which to properly evaluate the legitimacy of an excessive force claim.  Instead, the "reasonableness" inquiry in a Fourth Amendment excessive force case is an objective one, and the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See, e.g.*, *Scott v. United States*, 436 U.S. 128, 137-39 (1978).

Applying the objective standard, the court thus turns to a consideration of the nature and quality of the intrusion. In this regard, Plaintiff alleges and the record reveals that Defendant Kittles approached Plaintiff following his seizure and snatched open Plaintiff's shirt (a shirt which actually belonged to the GPD) to ultimately reveal the "vest which had a camera." Norman Dep., at 172.  The record does not establish that Defendant Kittles used additional force against the Plaintiff in conjunction with Plaintiff's seizure other than that required to rip his shirt open.   The record also does not establish that Plaintiff suffered injuries associated with Defendant Kittles's actions.  The evidence does however reveal that soon after seeing the vest, Defendant Kittles ordered Plaintiff's release to the custody of the GPD because Plaintiff was apparently an informant for them.

Next, in balancing Defendant Kittles's alleged intrusion (the act of ripping open Plaintiff's shirt) against the "government's interests alleged to justify the intrusion[,]" *Garner*, 471 U.S. at 8, the evidence establishes that at the time Defendant Kittles ripped Plaintiff's shirt, Defendant Kittles was involved in a high risk drug operation accompanied by its attendant dangers to persons and property.  Moreover, the confusion that resulted from the absence of communication between the GCSD and the GPD concerning the operation exacerbated tensions at the scene.  Under these circumstances, Defendant Kittles acted in a reasonable manner because, as one of the officers present at the scene and during the heat of the moment, Defendant

8

Kittles was attempting to confirm that a detained suspect was in fact a GPD informant. Therefore, given the absence of injury to Plaintiff specifically attributable to Defendant Kittles, and given his good faith attempt to confirm Plaintiff's status as a GPD informant, the court finds that the force Defendant Kittles applied did not "maliciously and sadistically . . . cause harm" to Plaintiff.  *See Wilkins,* 130 S. Ct. at 1178.  Accordingly, Defendant Kittles's Motion for Summary Judgment with respect to Plaintiff's excessive force claim is granted.

## II.    Fourth Amendment Probable Cause Claim

The Plaintiff alleges that Defendant Kittles violated his Fourth Amendment rights by arresting him without probable cause. Under the Fourth Amendment, people are "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, . . . and no warrants shall issue, but upon probable cause . . . " U.S. Const. amend. IV.  Thus, "[t]he Fourth Amendment standard for arrest is simply 'probable cause,' defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Fisher v. Washington Metro. Area Transit Auth.,* 690 F.2d 1133, 1138 (4th Cir. 1982) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1974)); *see also Wilkes v. Young*, 28 F.3d 1362 (4th Cir. 1994); *see also United States v. Miller,* 925 F.2d 695, 698 (4th Cir. 1991). "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). Probable cause must be supported by more than mere suspicion, but need not consist of evidence sufficient to convict. *See Wong Sun v. United States,* 371 U.S. 471, 479 (1963); *United States v. Gray,* 137 F.3d 765, 769 (4th Cir. 1998) (en banc). When determining what a "reasonable person" could believe, the expertise and experience of the law enforcement officers is considered. *See, e.g. United States v. Ortiz,* 422 U.S. 891, 897 (1975).

Defendant Kittles argues that summary judgment is appropriate because the officers had probable cause to carry out the arrest. In support, Defendant Kittles cites to a number of facts which were known to the officers at the time:

> 1) The officers were in the midst of a drug transaction concerning a $8000 amount of cocaine . . . . 2) [t]he VIDOC unit was responsible in arranging, conducting, surveiling, and intersecting the drug transaction . . . . 3) [t]he investigation led GCSD personnel to the actual car occupied by the would-be drug purchasers . . . . 4) [t]here was a reasonable belief that everyone in the car was involved in [the] drug transaction. There were two individuals in the black SUV and they were both located in the front seat. Therefore, probable cause existed that these two occupants were participating in the distribution of narcotics.

[Doc. 25-1, at 6] (incorporating by reference arguments made by Defendant Kittles's co-defendants in Doc. 24-1, at 7-8]). Defendants continue by reiterating that they were not aware of the parallel investigation that the GPD was conducting and for whom Plaintiff was serving as an informant. Defendants also argue that because Plaintiff was sitting in the front seat of the suspect vehicle that was the target of the GCSD's investigation, he was properly the subject of an arrest.

In addition to Defendant Kittles's arguments, the record establishes that Defendant Kittles did not arrest or detain Plaintiff. In his deposition, Defendant Kittles states that he was responsible for securing the driver of the subject vehicle and that Plaintiff was the passenger, not the driver. Moreover, Plaintiff testifies that he does not know the identity of the individual who removed him from the vehicle during the sting. To survive summary judgment, Plaintiff must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Because the officers had probable cause to carry out the arrest in which, with respect to Plaintiff in particular, Defendant Kittles did not

participate, summary judgment in favor of Defendant Kittles on Plaintiff's Fourth Amendment probable cause claim is appropriate.

### III.     Bystander Liability

Plaintiff alleges that Defendant "[Kittles] failed to protect him from such abuse by the other officers . . . in violation of his rights . . . ." [Doc. 1, at 3, ¶ 11]. Plaintiff is in essence asserting that Defendant Kittles is liable under §1983 on a theory of bystander liability. *See* [Doc. 36, at 4].

"The concept of bystander is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002). "[I]n certain limited situations, bystanding officers are obliged to act." *Id*. at 204. Therefore, "it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Id*. (quoting *Byrd v. Briske*, 466 F.2d 6, 11 (7th Cir. 1972)). Accordingly, "an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.*

Viewing the evidence in a light most favorable to Plaintiff, Defendant Kittles's presence and participation at the scene of the stop and arrest create genuine issues of fact sufficient for a jury's determination as to whether Defendant Kittles had a reasonable opportunity to prevent Plaintiff's injuries but chose not to. *See id.* The remaining question is whether Defendant Kittles knew that his fellow officers were violating Plaintiff's constitutional rights. *See id.* As to the knowledge element, the jury could reasonably infer from the facts and circumstances

surrounding the stop and arrest that Defendant Kittles is liable as a bystanding officer. Again, Defendant Kittles was intimately involved in the operation. He was responsible for removing the driver of the car in which Plaintiff was a passenger and he did actually remove that driver while Defendant Frederick was responsible for securing the Plaintiff. Deposition of Dale Kittles, at 26-28. [Doc. 25-3]. Although Plaintiff states that he is not completely certain who removed him from the vehicle, he testified during his deposition that it "[s]ounded like Mike Frederick." Norman Dep., at 105. Plaintiff also testified that co-defendant Hammett handcuffed him and that while on the ground, face down, and in handcuffs he felt "more than one knee" on his back. *Id*. at 118. Plaintiff also testified during his deposition that Defendant Frederick hit him in the mouth with the barrel of his gun. *Id*. at 124. The injuries that Plaintiff suffered during the course of these events are at the center of his excessive force claim not just against Defendant Kittles, but also against Defendant Kittles's co-defendants. According to Plaintiff, while "[he] was in handcuffs [and] couldn't get up on [his] own . . . [he] [saw] Dale Kittles and could hear Dale Kittles's mouth from 15 [feet] away." When viewed in a light most favorable to Plaintiff, as a central participant in the operation and at a distance of only 15 feet away, a reasonable jury could conclude that Defendant Kittles knew of the excessive force that his co-defendants were allegedly applying to Plaintiff. Accordingly, with respect to Plaintiff's claim of bystander liability, Defendant Kittles's motion for summary judgment is denied.

**IV.     Negligence**

Plaintiff argues that Defendant Kittles and his co-defendants were negligent because they did not follow their procedures for notifying GPD that they were conducting a drug operation within Greenwood city limits. On this point, Defendant Frederick and GCSD Chief Deputy, conceded that "a lack of inter-agency communication contributed to the Greenwood PD incident

. . . ." [Doc. 41-1, at 4]. At the same time, he also asserted that "neither VIDOC nor I violated the standing GCSD policy regarding the notification of GPD's on-duty Shift Captain prior to 'raids and/or major operations to be conducted within the city limits . . . [and that] [i]t has not been our practice to notify the city prior to traffic stops or vehicle takedowns in the past." *Id*.

Nevertheless, the court notes that Plaintiff's complaint does not state a negligence cause of action. But even if it did, in cases in which a "government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required." *Martin v. Saint Mary's Dept. Social Services*, 346 F.3d 502, 507 (4th Cir. 2003) (emphasis supplied) (quoting *Daniels v. Williams*, 474 U.S. 327, 333 (1986)); *see also Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001). Accordingly, Defendant Kittles is entitled to summary judgment on Plaintiff's purported claim for negligence.

## V.     Qualified Immunity

Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523 (1992). "Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Swagler v. Sheridan*, Civil Action No.: RDB-08-2289, 2011 WL 2746649 (D. Md. July 12, 2011) (citing *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008)). "To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct." *VanDerHorst v. Hoffer*, C/A No. 0:09-

cv-0706-SB-PJG, 2010 WL 1009997, at *2 (D.S.C. Feb. 16, 2010) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)). "Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand." *Id*.

The court found above, *see supra* Part. III, that with respect to Plaintiff's bystander liability claim, summary judgment is not appropriate because the facts viewed in a light most favorable to Plaintiff present a genuine issue of material fact as to whether Defendant Kittles, by his inaction, violated Plaintiff's constitutional rights. Therefore, the court will turn to the question of whether those rights were clearly established at the time of the violation.

To be clearly established,

> "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The issue that the court must resolve is whether, at the time the events occurred, the law "gave the officials 'fair warning' that their conduct was unconstitutional." *See Howie v. Prince George's Cty.*, Civil Action No. DKC 2006-3465, 2009 WL 2426018, at *7 (D. Md. Aug. 5, 2009) (quoting *Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)). Within the Fourth Amendment context, "[t]he law is clearly established that individuals have a right to be free from excessive force during the course of a seizure." *Id.* at *20 (citing *Turmon v. Jordan*, 405 F.3d 202, 207 (4th Cir. 2005)). Accordingly, Defendant Kittles is not entitled to the qualified immunity defense.

## CONCLUSION

For the foregoing reasons, Defendant Kittles's Motion for Summary Judgment [Doc. 25] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the court grants Defendant Kittles's request for summary judgment on Plaintiff's claims under the Fourth Amendment concerning probable cause, Plaintiff's claims under the Fifth, Eighth, and Fourteenth Amendments, and Plaintiff's claim for negligence. Defendant Kittles's request for summary judgment on Plaintiff's Fourth Amendment claim for excessive force is also granted. However, the court denies Defendant Kittles's request for judgment on Plaintiff's claim for bystander liability. The court further denies Defendant Kittles's request for summary judgment on the basis of qualified immunity.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

September 8, 2011
Greenville, South Carolina